CITY OF MUNCIE, INDIANA, AND OFFICE OF THE PUBLIC COUNSELOR *v.*
PUBLIC SERVICE COMMISSION OF INDIANA,
AND MUNCIE WATER WORKS COMPANY

[No. 2-677A246. Filed August 1, 1978. Rehearing denied September 12, 1978.
Transfer denied December 13, 1978.]

*James K. Sommer, Sommer, Barnard, Freiberger & Scopelitis*, of In-
dianapolis, *David S. Wallace*, Assistant City Attorney, of Muncie, *John
J. Metts*, Deputy Public Counselor, of Indianapolis, for appellant.

*Howard J. Cofield, Jon D. Noland, H. Kent Howard, Barnes, Hickam,*

*Pantzer & Boyd,* of Indianapolis, for appellee, Muncie Water Works Company.

LYBROOK, J.— In May, 1976, Muncie Water Works Company (Petitioner) filed a petition with the Public Service Commission of Indiana (Commission) for authority to increase its rates and charges. After investigation and public hearings, the Commission approved the petition and granted authority for the rate increases requested. A petition for a rehearing filed by the City of Muncie (Intervenor) and the Office of the Public Counselor (Public) was denied by the Commission. Intervenor and the Public then perfected this appeal by timely filing the record of proceedings and assignment of errors pursuant to IC 1971, 8-1-3-1 *et seq.*

Only one issue has been argued in this appeal:

Whether the findings of the Commission that Petitioner should be allowed to compute its federal income tax expense at the statutory rate rather than at its effective rate under the consolidated income tax return it files with its parent and other subsidiary corporations is contrary to law.

We reverse.

Petitioner, an Indiana corporation, operates as a public utility furnishing water utility services to Muncie and the surrounding area. Petitioner is also a wholly owned subsidiary of American Water Works Company, Inc. (AWW), a Delaware corporation. AWW is principally a holding company for approximately fifty water companies in twenty-one different states.

In the proceedings before the Commission on its petition for rate increase, Petitioner computed its federal income tax expense for rate-making purposes on the basis of what its tax liability would be as an individual taxable entity. However, it is uncontroverted that Petitioner does not file a separate federal income tax return but rather participates in a consolidated return with AWW and its other subsidiaries under the provisions of § 1501 *et seq.* of the Internal Revenue Code of 1954. Evidence was submitted at the hearing by Intervenor to show that because of tax savings resulting from losses and excess deductions of the other AWW subsidiaries, Petitioner's tax expense for the test year should have been computed at a 17% tax rate. Further, the Public in its brief urges that Petitioner should have calculated its federal income

tax expense at an effective rate of 3.75% instead of the statutory rate of 48%.

In its final order granting the rate increases requested by Petitioner, the Commission rejected the adjustments in federal income tax expense requested by Intervenor and the Public. Relying on *Public Service Commission v. Indiana Bell Telephone Company* (1955), 235 Ind. 1, 130 N.E.2d 467, the Commission stated in the case at bar that:

> "We conclude that it is our statutory duty to determine utility rates for Petitioner based upon its own separate operations over which we have jurisdiction without regard to the operating results, including the tax deductions and expense, of its stockholder, whether they be one or many, or other utilities affiliated solely through such stock ownership. *Public Service Comm. v. Ind. Bell Tel. Co.* (1956), [sic] 235 Ind. 1. Further, within the limits of our administrative discretion and expertise, we determine that utility rates for Indiana utilities should be determined on their own and just as the properties, revenues and expenses of other affiliated companies should not be attributed to Petitioner, likewise the tax expense deductions of such non-jurisdictional affiliates should not be considered."

As a further justification for denying the tax adjustment, the Commission stated that because a large portion of the tax savings realized by the filing of the consolidated returns resulted from accelerated depreciation and investment tax credits, this adjustment would constitute a flow-through of these deferred federal income tax benefits from other nonjurisdictional utilities to Petitioner's rate-paying customers. Because this flow-through rate-making policy is directly contrary to the normalization policy followed in this state, the effect of this adjustment, according to the Commission, would be to "require us to abdicate our own independent responsibility" in setting utility rates.

Intervenors argue that by allowing Petitioner to compute its federal income tax expense at the statutory rate of 48%, the Commission was improperly allowing an expense which was never incurred, thereby allowing to Petitioner's shareholder (AWW) an additional return on its capital. We agree.

In reviewing a rate-making decision of the Commission, we must bear in mind that this court exercises a very limited role of review:

"We start with the general principle that so long as there is any substantial evidence to support the rates as fixed by the commission as reasonable, the judicial branch of the government will not interfere with such legislative functions. We have no power or authority to substitute our personal judgment for what we might think is fair or reasonable in lieu of the administrative judgment of the public service commission." *Boone County REMC v. Public Service Commission* (1959), 239 Ind. 525, 159 N.E.2d 121, 124.

One of the basic tenets of judicial review of an administrative action is that an administrative order must be based on facts specifically found by the agency. Further, those facts must be based on substantial evidence in the agency's record of proceedings. When substantial evidence cannot be found in the record to support the agency's order, that order must be reversed as being contrary to law. *Public Service Commission v. Indiana Bell Telephone Co., supra; L.S. Ayres & Company v. Indianapolis Power and Light Company* (1976), 169 Ind. App. 653, 351 N.E.2d 814.

The evidence in the case before us is uncontroverted: Petitioner did not file a separate federal income tax return and did not compute its taxes at a rate of 48%. Therefore, it was error for the Commission to arbitrarily allow petitioner's tax expense to be computed on that basis.

The Commission's reliance on *Indiana Bell* is misplaced. In that case, Bell Telephone had petitioned for a rate increase. In justifying its denial of that requested increase, the Commission stated that it had computed Bell's allowable return on capital on the basis of the capital structure of Bell's parent corporation (A.T. & T.) rather than that of Bell itself. Because it had imputed a different capital structure to Bell, the Commission disallowed as an expense over $300,000 in federal income tax which Bell had actually paid. The Indiana Supreme Court reversed, holding that Bell was a utility separate and distinct from its parent, and must be treated as such for rate-making purposes.

Contrary to the arguments of Petitioner, we feel that the *Indiana Bell* case requires the Commission to make some determination of the actual tax liability of Petitioner, rather than use a hypothetical figure. Just as the Commission in *Indiana Bell* could not arbitrarily disallow taxes actually paid under a capital structure which did not exist, in this case the Commission cannot arbitrarily allow a tax expense computed

on the basis of a separate tax return when such a return was not actually filed. This does not mean that the expenses and revenues of affiliated companies must be attributed to Petitioner for rate-making purposes. Rather, it means that some determination must be made as to the tax savings accruing *to Petitioner* as a result of its participation in the filing of a consolidated federal income tax return. In this manner, a more accurate computation of Petitioner's actual federal income tax liability can be made.

The Court in *Indiana Bell* stated that the Commission must set a schedule of rates for a utility which will yield a fair return to that particular utility:

"Appellee is an Indiana corporation, a separate and distinct utility as defined by statute and it is the duty of the Commission to establish for it a schedule of rates which will produce a fair and non-confiscatory return upon its used and useful intrastate property, whether its stockholders are one or many, and without regard to its relationship to other companies." (Footnote omitted). 130 N.E.2d at 480.

We feel that by automatically assuming a tax rate of 48%, without any determination of the effective tax rate, and without any determination of the properly allowable income tax expense, the Commission is allowing an additional, hidden return on capital to the shareholders at the expense of the rate-payer. Furthermore, our research indicates that at least thirteen other jurisdictions have reached the same conclusion on this issue.[1] This case must therefore be remanded to the Commission for further findings and pro-

---

1. *Long Island Water Corp. v. Public Service Commission* (1975), 374 NYS 2d 841, 49 App.Div.2d 392; *Pennsylvania Public Utility Commission v. South Pittsburgh Water Co.* (Penn. Public Utility Comm. 1970), 84 PUR.3d 487; *Re Jersey Central Power & Light Co.* (N.J. Board of Public Utility Commissioner 1973), 2 PUR. 4th 70; *Re Salisbury Water Supply Co.* (Mass. Dept. of Public Utilities 1964), 54 PUR.3d 196; *Re Arkansas Louisiana Gas Co.* (Ark. Public Service Comm. 1974), 4 PUR.4th 265; *Re Central Vermont Public Service Corp.* (Vt. Public Ser. Bd. 1971), 89 PUR.3d 121; *Re City Water Co. of Chattanooga* (Tenn. Public Ser. Comm. 1970), 84 PUR.3d 264; *Re Davenport Water Co.* (Iowa State Commerce Comm. 1968), 76 PUR.3d 209; *Re Lexington Water Co.* (Ky. Public Ser. Comm. 1968), 72 PUR.3d 253; *Re Michigan Consolidated Gas Co.* (Mich. Public Ser. Comm. 1969), 79 PUR.3d 375; *Re Minneapolis Transit Co.* (Minn. Public Ser. Comm. 1969), 81 PUR.3d 232; *Re Potomac Edison Co. of W. Virginia* (W. Va. Public Ser. Comm. 1974), 6 PUR. 4th 183; *Re Stamford Water Co.* (Conn. Public Utilities Comm. 1971), 89 PUR.3d 502. Some of the above decisions involved other AWW subsidiaries.

ceedings to determine the effective federal income tax rate and resulting tax expense of Petitioner.

As stated above, there is a wide variance in the figures asserted as the proper tax rate to be used: Intervenor claims 17%, the Public claims 3.75%. The determination is further complicated by the fact that a large portion of the tax savings claimed by Intervenor and the Public is attributable to the accelerated depreciation deductions and investment tax credits claimed by the various subsidiary corporations of AWW. The Commission has consistently denied an immediate flow-through of such benefits to the rate-payers in favor of a policy of normalization, and this policy has been upheld by our Supreme Court. *Boone County REMC v. Public Service Commission, supra.* See also *City of Evansville v. Southern Indiana Gas & Electric Co.* (1975), 167 Ind. App. 472, 339 N.E.2d 562. At the public hearings on the rate increase, Petitioner submitted evidence to show that, after a proper consideration of the deferred tax expense reserve for accelerated depreciation and investment tax credit, the effective tax rate should be no less than 42%.

We do not feel that we have the proper authority, at least at this time, to suggest or order the proper tax rate to be used in determining petitioner's utility rates. Such a determination is properly within the discretion of the Commission. As was stated in *Indiana Bell*:

"Courts do not have the power to revise or change a schedule of rates imposed by the Public Service Commission; they do not determine whether one rate is preferable to another, nor do they perform mere ministerial duties." 130 N.E.2d at 475.

The information and evidence contained in the record as to the determination of an effective tax rate for Petitioner is both complex and conflicting. The figures for possible effective tax rates suggested by the parties range from 42% to 3.75%. Furthermore, the determination of such a figure may well involve issues of regulatory policy. It is not the duty of this court to sift and weigh evidence, and then interpret that result through the application of regulatory policy. Rather, this procedure has been consigned to the discretion and expertise of the Commission.

The order of the Public Service Commission is reversed and remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

Buchanan, C.J., participating by designation, concurs.

Lowdermilk, J., concurs.

NOTE—Reported at 378 N.E.2d 896.