OFFICE OF UTILITY CONSUMER COUNSELOR (Formerly, Office of Public Counselor), Appellant,

v.

INDIANA CITIES WATER CORPORATION, Appellee.

No. 2–1281A394.

Court of Appeals of Indiana, Third District.

Sept. 28, 1982.

Rehearing Denied Nov. 9, 1982.

John Q. Herrin, Asst. Consumer Counselor, Indianapolis, for appellant.

William F. Welch, Randolph L. Seger, McHale, Cook & Welch, P. C., Indianapolis, for appellee.

STATON, Judge.

Indiana Cities Water Corporation operates twelve water systems in twelve different Indiana cities and also operates a sewage system in one of the cities. These systems serve over fifty thousand people.

Indiana Cities is a wholly owned subsidiary of Consolidated Water Company. Consolidated is a wholly owned subsidiary of Avatar Utilities, Inc. Avatar Utilities is wholly owned by Avatar Holdings, Inc. Avatar Holdings filed a consolidated income tax return with the IRS for all these companies rather than each company filing a separate return. Avatar Holdings did not pay any money to the IRS for income tax because previously generated tax loss carry overs from the bankruptcy reorganization of the predecessor of Avatar Holdings more than offset the taxable income listed on the consolidated return. Indiana Cities had paid to Consolidated Water the amount it would have owed for income taxes if it had filed an individual return on a separate entity basis. Indiana Cities considers this transfer of money as an expense for federal income taxes.

On March 31, 1981, Indiana Cities petitioned the Public Service Commission to

increase the rates for all twelve water systems and the one sewage system.[1] After public hearing, the Commission ordered a rate increase. The Office of Utility Consumer Counselor is appealing from the orders of the Commission pursuant to IC 1976, 8–1–3–1.[2]

The Consumer Counselor raises on appeal the issue [3] of whether the rate order of the Commission is unreasonable and contrary to law because the Commission allowed Indiana Cities to claim as an expense the amount it would owe for income taxes on a single entity basis when the utility's actual tax liability is zero after a consolidated return is filed. The Utility Counselor argues that the amount Indiana Cities paid to its parent corporation for federal income taxes is only a *hypothetical* tax expense for rate determination purposes since the money paid to the parent corporation is not actually paid to the U.S. government for federal income taxes. We reverse.

■■■ The Commission's primary objective in every rate proceedings is to establish a level of rates and charges sufficient to permit the utility to meet its operating expenses plus a return on investment which will compensate its investors. *City of Evansville v. Southern Indiana Gas and Electric Company* (1975), 167 Ind.App. 472, 339 N.E.2d 562, 568.[4] The utility's revenues minus its expenses, exclusive of interest, constitute the earnings or the "return" that is available to be distributed to the utility's investors. Allowable operating costs include all types of operating expenses (e.g. wages, salaries, fuel, maintenance) plus annual charges for depreciation and operating taxes. While the utility may incur any amount of operating expenses it chooses, the Commission is invested with broad discretion to disallow for rate-making purposes any excessive or imprudent expenditures. *Id.* at 568–569.

Our case law

"requires the Commission to make some determination of the *actual* tax liability of Petitioner, rather than use a hypothetical figure ... *[T]he Commission cannot arbitrarily allow a tax expense computed on the basis of a separate tax return when such a return was not actually filed.* This does not mean that the expenses and revenues of affiliated companies must be attributed to Petitioner for rate-making purposes. Rather, it means that *some determination must be made as to the tax savings accruing to <u>Petitioner</u> as a result of* its participation in the filing of a consolidated federal income tax return. In this manner, a more accurate computation of Petitioner's actual federal income tax liability can be made." (Emphasis added; underlining indicates original_emphasis.)

*City of Muncie v. Public Service Commission* (1978), Ind.App., 378 N.E.2d 896, 898–899. If an accurate computation of the *actual tax expense* of the utility is not computed, the Commission is allowing an additional, hidden return on capital to the

---

1. Thirteen separate petitions were filed. Indiana Cities also petitioned the Commission to consolidate the proceedings before one commissioner. The Commission consolidated the proceedings.

2. IC 8–1–3–1 states:

   "Any person, firm, association, corporation, city, town or public utility adversely affected by any final decision, ruling, or order of the public service commission of Indiana, may, within thirty [30] days from the date of entry of such decision, ruling, or order, appeal to the Appellate Court [Court of Appeals] of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions, except as otherwise herein provided, and with the right in the losing party or parties in the Appellate Court

   [Court of Appeals] to apply to the Supreme Court for a petition to transfer the cause to said Supreme Court as in other cases. An assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered. [Acts 1957, ch. 189, § 1, p. 395.]." (Brackets original.)

3. The issue has been reworded.

4. *City of Evansville* should be consulted for an indepth discussion of the methodology of rate regulation.

shareholders at the expense of the consumer rate-payer. *Id.*

As Judge Garrard stated in *Office of Public Counselor v. Indiana & Michigan Electric Co.* (1981), Ind.App., 416 N.E.2d 161 at 168:

"The question facing us concerns the extent to which this court should involve itself in directing the Commission in the performance of its duties. While *City of Muncie* and *Citizens Energy Coalition* [*v. Indiana & Michigan Electric Co.* (1979), Ind.App., 396 N.E.2d 441] stress that tax expense must be based upon an actual rather than hypothetical figure, both cases leave the actual determination to the discretion of the Commission. These cases implicitly recognize that the ability of this court to fully apply the principles of utility accounting, and the intricacies of rate base evaluation, is limited. On the other hand, we cannot stand behind the guise of Commission discretion as an avoidance of our responsibility of assuring the citizens of Indiana that utility charges imposed upon them are 'reasonable and just.' IC 8–1–2–4." (Brackets added.)

The Commission stated the following in its findings of fact:

"Witness Perry, on behalf of the Intervenors, urged upon the Commission (Intervenor's Exhibit 7) the allowance of a zero federal income tax expense for Petitioner in the test year, arguing that because the amount of the tax liability calculated for Petitioner and paid by it to its immediate parent was not paid by the ultimate parent to the Internal Revenue Service, Petitioner should not be allowed any current federal income tax expense.

"The Utility Consumer Counselor argued in his brief that tax deductions available to Petitioner via its parent's consolidated tax returns during the test year constituted a 'permanent timing difference.' The Commission believes that he meant a 'permanent difference.' A permanent difference between book net income and taxable net income exists when a transaction which affects book net income will *never* affect taxable net income. A 'timing difference' exists when transactions affecting taxable net income are recorded in different accounting periods for reporting taxable net income than for reporting book net income. Unlike permanent differences, timing differences are reversed and eliminated with the passage of time.

"In this case, the issue is that of jurisdiction rather than permanent or timing differences. That the money which Petitioner is claiming for federal income tax expense in the test year will never be paid to the federal government is not in dispute. There is no question that it would be welcomed by Petitioner's ratepayers *in this cause* for the Commission to disallow Petitioner's claim for income tax expense. However, not one of the tax loss carryforwards [*sic*] was generated by, or was in any way related to, the operations of Petitioner; all were attributable to non-jurisdictional, non-regulated entities.

"The proper allowance of Petitioner's federal income tax expense in the test year should be determined on the basis of its being a separate, independent entity, with an appropriate adjustment for its allocated share of its immediate parent's interest expense on long-term debt. This Commission's order approved September 16, 1981, in the *Muncie Waterworks Company* case, supports Petitioner's position that the federal income tax expense which it calculates on an adjusted separate return basis and which it pays to its parent is

"a properly allowable expense. This Commission, in its recent order in the *Muncie* case stated in pertinent part as follows:

'The use of such consolidated "effective tax rate" would have the effect of imputing to Petitioner and its ratepayers, expenses and revenues of other AWW subsidiaries. The result when the tax losses of other operating com-

panies would reduce Petitioner's revenue requirements and thus lower utility rates may be attractive, *but would or should the ratepayers of Petitioner be willing or expected to pay higher utility rates when the imputation of such operations of other subsidiaries results in increasing Petitioner's revenue requirement.* We think not. Both results are questionable and tend to usurp our ratemaking authority over Petitioner.

"D. The use of a consolidated 'effective tax rate' to set rates for separate utilities in separate and distinct jurisdictions is without merit. The ratepayers of a utility in our jurisdiction should not be burdened with the expenses or rate base requirements of other utilities in the same or other jurisdictions. It is *unreasonable to increase or decrease the utility rates of Petitioner based upon decreases or increases to Petitioner's tax expense resulting from operation results of other subsidiaries or differing regulatory policies of other jurisdictions beyond the control of either the Petitioner or this Commission.* (See Finding No. 3E herein).' (Emphasis added) *Muncie Water Works Company,* Cause No. 34571, P. 14 (September 16, 1981).

"The Commission found that it was improper in the *Muncie* case to increase or decrease the utility rates of Muncie Water based upon decreases or increases to Muncie Water's tax expense which resulted from operational results of non-jurisdictional subsidiaries of the ultimate parent. Similarly the Commission finds in this case that the prior year tax loss carryforwards *[sic]* of non-jurisdictional, non-regulated subsidiaries of Indiana Cities' ultimate parent may not be used to reduce Indiana Cities allowance of federal income tax expense." (Parentheses original, emphasis original.).

IC 8–1–3–1 mandates a two tiered standard of review. At the first level of review, the statute requires that the decision of the Commission contain specific findings on all the factual determinations material to its ultimate conclusions. *L.S. Ayres & Co. v. Indianapolis Power & Light Company* (1976), 169 Ind.App. 652, 351 N.E.2d 814, 822. It is a question of law whether the Commission's ultimate conclusion may be "reasonably" inferred from its findings of basic facts. *Id.* The second level of review prescribed by statute requires the reviewing court to inquire whether there is substantial evidence in light of the whole record to support the Commission's findings of basic fact. *Id.* This standard authorizes a reviewing court to set aside Commission findings of fact when a review of the whole record clearly indicates that the agency's decision lacks a reasonably sound basis of evidentiary support. *Id.* at 823. This requires us to consider both the evidence in opposition to a basic finding of fact as well as the evidence tending to support the finding. *Id.*

The Commission's own findings state that the result of the participation of Indiana Cities in a consolidated tax return is that no income taxes are paid to the U.S. government. Given that finding, we fail to understand how Indiana cities can be said to have an *actual* income tax expense.

■ Indiana Cities chose to participate in a consolidated return. The Commission's own findings indicate that a substantial tax savings was achieved; however, the Commission attempts to ignore the savings by claiming that to recognize the savings would usurp its ratemaking authority and allow outside, unregulated forces to determine if utility rates should be increased or decreased. It is as if Indiana cities bought equipment from its unregulated parent corporation at the regular price charged by the parent corporation. This price is one half the amount it would have cost Indiana Cities to manufacture the equipment itself. The Commission would determine that Indiana Cities should pay its parent corporation what it would cost Indiana Cities to make

the equipment itself; the Commission would insist Indiana Cities list the extra amount given to its investors (parent corporation) as an expense rather than as part of the rate of return of investment so that the rate-making authority of the Commission is not usurped by an unregulated corporation. Such practices ignore reality and masquerade as a rate of return as an operating expense. This can not be allowed.[5] *City of Muncie, supra* 378 N.E.2d at 899.

5. Indiana Cities argues that the Commission's policy of normalization prohibits such a result. We do not believe that our decision affects the policy of normalization because Indiana Cities did not retain the so called "income tax expense" in a reserve account. The money was not available to pay future income taxes assessed because of the accounting methods used today.

Reversed and remanded for the preparation of an order not inconsistent with this opinion.

HOFFMAN, P. J., and GARRARD, J., concur.