OFFICE OF UTILITY CONSUMER
COUNSELOR, Appellant–
Respondent,

v.

GARY–HOBART WATER CORPO-
RATION, Appellee–Petitioner.

No. 93A02–9312–EX–694.

Court of Appeals of Indiana,
Fifth District.

May 30, 1995.

Colleen F. McNenny, Robert M. Glennon, Rita J. Baldwin, Office of Utility Consumer Counselor, Indianapolis, for appellant.

Daniel W. McGill, Barnes & Thornburg, Indianapolis, for appellee.

## OPINION

BARTEAU, Judge.

The Office of Utility Consumer Counselor ("OUCC") appeals the order of the Indiana Utility Regulatory Commission ("Commission") approving a rate increase for Gary–Hobart Water Corporation ("Gary–Hobart"). OUCC argues that the rate approved by the Commission is excessive. Specifically, OUCC raises three issues:

1. Whether the approved rate of return is greater than necessary for Gary–Hobart to attract capital, maintain financial integrity, and compensate investors;

2. Whether the Commission erroneously interpreted the historical inflation rate table to determine the applicable average historical inflation rate; and

3. Whether the evidence supports the use of Gary–Hobart's proposed net operating income in the calculation of a fair rate of return.

We heard oral argument on April 17, 1995, and now affirm.

### FAIR RATE OF RETURN

■ The Commission found that Gary–Hobart's used and useful property had a fair value of $64,000,000 and that a fair rate of return on that property was 5.287%, resulting in net operating income of $3,383,680. OUCC argues that the Commission approved an excessive rate of return for Gary–Hobart. In conjunction with this argument, OUCC contends that the Commission erroneously believes the law will not allow it to base a fair rate of return on the original cost of the used and useful property of the utility.

■ Indiana Code 8–1–2–6 states that the "commission shall value all property of every public utility actually used and useful for the convenience of the public at its fair value, giving such consideration as it deems appropriate in each case to all bases of valuation which may be presented...." As explained in *Indianapolis Water v. Public Service Comm'n* (1985), Ind.App., 484 N.E.2d 635, 639, the " 'fair value' referred to in the statute is the figure which constitutes the rate base upon which a utility should be allowed to earn a return."

The property included in the "rate base" may be valued by one of two standard methods: (1) The "original cost" method, which is based on book value[,] "the cost of an asset when first devoted to public service", or (2) the "fair value" method, which takes into account the declining purchasing power of the dollar through "reproduction costs new" studies utilizing price indices or other measurements of an investment's current value. The Indiana statutory scheme authorizes the use of either valuation method.

*Id.* at 638–639.

■ "Fair value" as used in I.C. 8–1–2–6 in reference to the Commission's duty to value the used and useful property of the utility does not mean "fair value" as used in reference to the reproduction cost new method. *Id.* at 639. "Fair value [as used in I.C. 8–1–2–6] is a conclusion or final figure, drawn from all the various 'values' or factors to be weighed ... by the Commission." *Id.* (quoting *Public Service Comm'n v. City of Indianapolis* (1956), 235 Ind. 70, 95, 131 N.E.2d 308, 318).

■ Once the rate base (the final determination of the fair value of the used and useful property) has been determined, the Commission must determine the fair rate of return on that base. Generally, the starting point is the utility's weighted cost of capital. *L.S. Ayres & Co. v. Indianapolis Power & Light* (1976), 169 Ind.App. 652, 659, 351 N.E.2d 814, 820–821. Ultimately, though,

what annual rate will constitute just compensation depends upon many circumstances, and must be determined by the exercise of a fair and enlightened judgment, having regard to all relevant facts. A public utility is entitled to such rates as will permit it to earn a return on the value of the property which it employs for the convenience of the public and equal to that generally being made at the same time and in the general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties.... The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to support its credit and enable it to raise the money necessary for the proper discharge of its public duties.

*Office of Utility Consumer Counselor v. Public Service Co. of Indiana, Inc.* (1983), Ind. App., 449 N.E.2d 604, 607–608 (quoting *Bluefield Water Works & Improvement Co. v. Public Service Comm'n of West Virginia*

(1923), 262 U.S. 679, 692–693, 43 S.Ct. 675, 679, 67 L.Ed. 1176).

OUCC proposed allowing a net operating income of $3,106,354, resulting from applying a cost of capital calculation of 10.75% to the net original cost rate base. The Commission rejected this methodology as being prohibited by *Gary–Hobart Water Corp. v. Indiana Utility Reg. Comm'n* (1992), Ind.App., 591 N.E.2d 649, *reh'g denied,* and OUCC argues the Commission believes it may not use the original cost as the rate base. In *Gary–Hobart,* the court held the Commission erred in applying the fair rate of return to the utility's original cost base of $39,788,459 when the Commission had already determined that the fair value of the used and useful property was $62,000,000. It is not per se erroneous to determine that the original cost base is the fair value of the used and useful property, but the Commission here correctly noted that it had already determined the fair value was something other than the original cost base and so could not use the formula proposed by OUCC.

OUCC argues, nevertheless, the approved rate is excessive because the Commission found that OUCC's proposed rate of return and corresponding net operating income would give Gary–Hobart an interest coverage ratio sufficient to give it access to the capital markets. OUCC also argues that the rate approved by the Commission "translates into an opportunity for Gary–Hobart to earn a return on equity of approximately 12.35%," Reply Brief of Appellant, p. 13, which is a premium over the amount necessary to cover the cost of capital of 11.5% found by the Commission.

■■■ However, as noted above, access to capital markets is but one factor the Commission should consider in determining whether a rate of return is fair. *Office of Utility Consumer Counselor,* 449 N.E.2d at 607–608. Thus, merely because the approved rate is in excess of that necessary to attract capital is not cause to reverse the Commission's finding. Similarly, the cost of capital is merely a starting point for the Commission in determining what is a fair return. *Gary–Hobart,* 591 N.E.2d at 653. OUCC has not pointed to any authority

which suggests that the Commission's ultimate determination of a fair rate of return may not result in a return on capital that is higher than the cost of capital.

■■■ We must give great deference to the Commission's rate making methodology. *Citizens Action Coalition v. Northern Indiana Public Service Comm'n* (1990), Ind. App., 555 N.E.2d 162, 163. In determining whether the evidence supports the Commission's decision, we neither reweigh the evidence nor substitute our judgment for that of the Commission. *Id.* at 165. OUCC has not shown that the evidence does not support the Commission's findings here.

## HISTORICAL INFLATION RATE

In its calculations of a fair rate of return for Gary–Hobart, the Commission adjusted Gary–Hobart's proposed rate of return to remove the historical inflation rate from the cost of capital component of the rate of return. The Commission found that the appropriate average historical inflation rate for the years 1980 through 1992 was 3.9%, based upon a table of historical inflation rates submitted into evidence by OUCC. In its proposed rate calculation, Gary–Hobart had used a prospective inflation rate of 3.1% to adjust the cost of capital. Thus, the Commission reduced Gary–Hobart's proposed rate of return by .8%, resulting in a rate of return of 5.287%. The Commission found this to be a fair rate of return on the fair value of Gary–Hobart's used and useful property, resulting in net operating income of $3,383,680.

■■■ OUCC argues that the Commission erroneously used 3.9% as the average historical inflation rate for the years 1980 through 1992. According to OUCC, a correct reading of the table yields an average historical inflation rate of 4.8%. Thus, if the Commission had used the correct number, the rate of return would be 4.387%, resulting in a net operating income of $2,807,680.

■■■ Gary–Hobart makes two responses to this argument. First, Gary–Hobart argues that because OUCC proposed a rate of return of 4.85% before the Commission, it

cannot now argue that the rate of return should be 4.387%. This response misses the thrust of OUCC's argument. OUCC merely argues that the Commission made the determination to use Gary–Hobart's proposed rate adjusted for historical inflation effects, but then used the wrong inflation rate to make the adjustment. OUCC is asking this court to remand to the Commission so that the correct inflation rate is used in the Commission's calculation.

Gary–Hobart also argues that we cannot order the Commission to consider a particular inflation rate, presumably because that would infringe on the Commission's fact-finding authority. Gary–Hobart argues that the Commission was free to use the table of inflation rates as it saw fit because OUCC did not present any evidence on how to read the table. The table of inflation rates was attached to OUCC's expert's written testimony. Nothing in that testimony explained how the table should be used. The Commission found that the average historical inflation rate for the years 1980 through 1992 was 3.9%. The question is whether the evidence supports this finding. The table itself does not state whether the figures given for each year are averages. The Commission took the average of the figures given for the years 1980 through 1992 and used that resulting figure, 3.9%, as the average historical inflation adjustment. The evidence supports the Commission's finding of the average historical inflation rate.

### GARY–HOBART'S PROPOSED RATE OF RETURN

■ OUCC argues that the Commission erroneously used Gary–Hobart's proposed rate of return as a starting point in determining a fair rate of return, even though the Commission criticized the underlying analysis resulting in Gary–Hobart's proposed rate. The Commission did level much criticism at the methodologies used by Gary–Hobart's expert that resulted in a fair rate of return of 6.64%, giving a net operating income of $4,250,000. However, as Gary–Hobart points out, the Commission did not use that rate of return or operating net income as a starting point for its ultimate determination of a fair

rate. As stated above, the Commission took Gary–Hobart's proposed rate of return of 6.087%, a lower rate than that justified by its expert's analysis, and analyzed whether that rate was reasonable. The Commission adjusted that rate to remove the effects of historical inflation and determined that the resulting rate of return was a fair return. Thus, the record belies OUCC's argument that the Commission relied upon a rate of return not supported by the evidence.

### CONCLUSION

OUCC has not shown that the approved rate is excessive or that the Commission erroneously arrived at the figures used to calculate the fair rate of return. Thus, the Commission's order granting a rate increase to Gary–Hobart is AFFIRMED.

SHARPNACK, C.J., and RUCKER, J., concur.