**INDIANAPOLIS WATER COMPANY, Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF INDIANA, Office of the Utility Consumer Counselor, Appellees.**

No. 2-485A117.

Court of Appeals of Indiana, Third District.

Oct. 31, 1985.

Fred E. Schlegel, Michael J. Huston, Mary M. Stanley, Baker & Daniels, Indianapolis, for appellant.

John Q. Herrin, Asst. Consumer Counselor, Indianapolis, for appellee Office of the Utility Consumer Counselor.

STATON, Presiding Judge.

The Indianapolis Water Company appeals from an order of the Public Service Commission on the Company's petition for approval of new schedules of rates. The sole issue presented for our review is whether the Commission erred in using, for rate base purposes, the original cost of the Company's used and useful property instead of the current fair value of the property.

The Company requested approval of rates which would produce total annual operating revenues of $45,842,609.00, for a return of approximately $12.5 million. The parties stipulated that the current fair market value of the Company's utility plant consisting of land used and useful in ren-

dering utility service was not less than $18,291,850.00. They also stipulated that the reproduction cost new, less depreciation, of the Company's utility plant consisting of property other than land was not less than $361,821,775.00.

In its final order the Commission found that "the fair value of the Petitioner's utility plant in service as of September 30, 1984, exclusive of materials and supplies [and] Petitioner's cash working capital requirements, is not less than $380,113,-625.00." The commission also found that the original cost of the Company's used and useful utility plant in service, less accumulated depreciation and contributions in aid of construction was $130,527,035.00 and that this figure was the Company's "original cost rate base upon which it should be allowed to earn a rate of return...." Having determined that the Company should be allowed the opportunity to earn an 8.92% rate of return, the Commission applied this figure to the "original cost rate base" ($130,527,035.00 × 8.92%) to produce a return of $11,643,012.00, somewhat short of the Company's request.

■ In approving rates the Commission's objective is to establish a level of rates and charges sufficient to permit the utility to meet its operating expenses plus a return on investment which will compensate its investors. *City of Evansville v. Southern Indiana Gas & Elec Co.* (1975), 167 Ind.App. 472, 339 N.E.2d 562, 568. The utility's revenues minus its expenses, exclusive of interest, constitute the return available for distribution to investors. *Id.* The "rate of return" is the ratio of return to "rate base"—the net investment in physical properties plus an allowance for working capital, 339 N.E.2d at 569.

■ To help determine what constitutes a "fair rate of return" the Commission generally calculates a composite "cost of capital" by summing the weighted costs of various components of the utility's capital structure, i.e., long term debt, preferred stock, common stock. This figure, when expressed as a percentage of the utility's combined debt and equity accounts is then compared with the utility's existing rate of return, serving as an initial point of reference in establishing a "fair rate of return" for utility operations. 339 N.E.2d at 570. The rate of return (8.92%) approved by the Commission in the instant case is, in fact, the product of the Commission's cost of capital calculations.

## I.

### Standard of Review

■ Our standard of review in appeals from orders of the Public Service Commission has been well defined. *See L.S. Ayres & Co. v. Indianapolis Power & Light Co.* (1976), 169 Ind.App. 652, 656, 351 N.E.2d 814. IC 8–1–3–1 (Burns Code 1982 Ed.) provides a two-tiered standard of review:

"An assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered."

We look first at whether the Commission has illuminated its decision with specific findings of fact which afford the Court a rational basis for review. 351 N.E.2d at 822. Next, we review whether there is substantial evidence in light of the whole record to support the Commission's findings of basic fact. *Id.* We are not free to weigh and analyze the evidence presented or substitute our judgment for that of the Commission. *Bethlehem Steel v. Northern Ind. Public Service* (1979), Ind.App., 397 N.E.2d 623, 628. *Capital Improvement Bd., Etc. v. Public Service Commission* (1978), 76 Ind.App. 240, 375 N.E.2d 616, 622. The substantial evidence standard authorizes a reviewing court to set aside Commission findings of fact when a review of the whole record clearly indicates that the agency's decision lacks a reasonably sound basis of evidentiary support. *L.S. Ayres & Co., supra,* 351 N.E.2d at 823.

In addition to the limited review imposed by the substantial evidence test, the court may always properly inquire into whether the Commission's order is contrary to law—that is, was the order the result of considering or failing to consider some factor or element which improperly influenced the final decision? The Commission must remain within its jurisdiction and conform to all relevant statutes, standards and legal principles. *Public Service Commission v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308, 312–313.

## II.

### Fair Value

The Company argues that the Commission acted contrary to law in applying the allowed rate of return to the original or book cost of the utility's used and useful property.

As we noted above the utility's rate of return is the ratio of return to rate base. The rate base is determined by valuing the utility's property in accordance with the guidelines in IC 8-1-2-6 (Burns Code 1982 Ed.) which provides:

"(a) *The commission shall value all property of every public utility actually used and useful for the convenience of the public at its fair value, giving such consideration as it deems appropriate in each case to all bases of valuation which may be presented or which the commission is authorized to consider by the following provisions of this section.* As one [1] of the elements in such valuation the commission shall give weight to the reasonable cost of bringing the property to its then state of efficiency. In making such valuation, the commission may avail itself of any information in possession of the state board of tax commissioners or of any local authorities. The commission may accept any valuation of the physical property made by the interstate commerce commission of any public utility subject to the provisions of this act.

"(b) The lands of such public utility shall not be valued at a greater amount than the assessed value of said lands exclusive of improvements as valued for taxation. In making such valuation no account shall be taken of presumptive value resting on natural resources independent of any structures in relation thereto, the natural resource itself shall be viewed as the public's property. No account shall be taken of good will for presumptive values growing out of the operation of any utility as a going concern, all such values to rest with the municipality by reason of the special and exclusive grants given such utility enterprises. No account shall be taken of construction costs unless such costs were actually incurred and paid as part of the cost entering into the construction of the utility. All public utility valuations shall be based upon tangible property, that is, such property as has value by reason of construction costs, either in materials purchased or in assembling of materials into structures by the labor or (of) workers and the services of superintendents, including engineers, legal and court costs, accounting systems and transportation costs, and also including insurance and interest charges on capital accounts during the construction period. *As an element in determining value the commission may also take into account reproduction costs at current prices, less depreciation,* based on the items set forth in the last sentence hereof and shall not include good will, going value, or natural resources." (Emphasis added.)

The Company challenges the Commission's handling of the "fair value". Some uncertainty exists in the Commission's treatment of this issue. After finding that the fair value of the Company's utility plant in service was not less than $380,113,-625.00, Record at 121–122, the Commission cited several cases for the proposition that:

"The property included in the 'rate base' may be valued by one of two standard methods: (1) The 'original cost' method, which is based on book value 'the cost of an asset when first devoted to public

service', or (2) the 'fair value' method, which takes into account the declining purchasing power of the dollar through 'reproduction costs new' studies utilizing price indices or other measurements of an investment's current value. The Indiana statutory scheme authorizes the use of either valuation method. *Bethlehem Steel v. Northern Indiana Public Service,* (1979) Ind.App., 397 NE2d 623, 629, *L.S. Ayres & Company v. Indianapolis Power & Light Company,* (1976), [169] Ind.App. [652], 351 NE2d 814, *City of Evansville v. Southern Indiana Gas & Electric Company,* (1979) [ (1975) ], [167] Ind.App. [472], 339 N.E.2d 562."

Then the Commission made the following statement:

"Nothing in the Code gives the Commission any direction as to what is to be done with this 'fair value' once determined Nevertheless, on the basis of the foregoing findings and giving appropriate weight to all relevant basis of valuation presented in this proceeding, the Commission finds that the fair value of Petitioner's utility plant in service, used and useful for the public convenience is not less than $130,527,035 nor more than $380,113,625. The Commission also finds that Petitioner's original cost rate base upon which it should be allowed to earn a rate of return which equals $130,527,-035."

Record, at 123.

█ We think it is clear that the "fair value" referred to in the statute is the figure which constitutes the rate base upon which a utility should be allowed to earn a return. *See e.g., Public Service Commission v. City of Indianapolis, supra* 131 N.E.2d at 317; *City of Evansville v. Southern Indiana Gas & Elec. Co., supra* 339 N.E.2d at 569 (the "rate base" consists of that utility property employed in providing the public with the service for which rates are charged and constitutes the investment upon which the "return" is to be earned). Therefore, it is improper for the Commission to find that the fair value of the Company's property is $380,113,625.00 and to also find that the rate base upon which it should be allowed to earn a rate of return is the original cost of the property or $130,527,035.00.

The apparent confusion may be the result, in part, of the language in the cases quoted by the Commission. That language first appeared in *City of Evansville v. Southern Indiana Gas & Elec. Co.* in a lengthy discussion by this Court setting forth the basic methodology of rate making. It was later quoted verbatim in the *L.S. Ayres* and *Bethlehem Steel* cases. In the passage cited above and quoted by the Commission, we noted that property could be valued either by the original cost method or the "fair value" method. The use of the term "fair value" in reference to reproduction cost new was, perhaps, a misleading choice of words. To the extent that that passage equates fair value only with reproduction cost new or suggests that valuation of utility property is an either/or choice between original cost and reproduction cost, we wish to clarify the record.

In the words of the Supreme Court "[f]air value is a conclusion or final figure, drawn from all the various 'values' or factors to be weighed in accordance with the statute by the Commission." *Public Service Commission v. City of Indianapolis, supra* 131 N.E.2d at 318. The Court went on to say:

"[t]he courts will not limit the Commission to any one or more methods of valuation, be it prudent investment, original cost, present value, or cost of reproduction. This court has held that cost of reproduction depreciated is a proper item to be considered under the statute in arriving at a fair value figure. *Public Service Commission v. Indianapolis Rys., supra,* 1948, 225 Ind. 656, 76 N.E.2d 841. The rate-making process involves a balancing of all these factors and probably others; a balancing of the owner's or investor's interest with the consumer's interest. On the one side, the rates may not be so low as to confiscate the investor's interest or property; on the other side the rates may not be so

high as to injure the consumer by charging an exorbitant price for service and at the same time giving the utility owner an unreasonable or excessive profit."

*Id.*

 Although it is clear from the statute and from the case law that the Commission has discretion in determining the fair value of utility property, it is also clear that the Commission may not ignore the commonly known and recognized fact of inflation. In his concurring opinion in *Public Service Commission v. City of Indianapolis* Judge Emmert commented:

"We judicially know there has been an inflation in values since 1939. A utility corporation and its stockholders take the gain from an increase in values of its property, and they stand the loss when values depreciate during a time of falling prices or a depression, just the same as any other corporation and its stockholders may benefit or lose when the value of the corporate property goes up or down. If the state condemns a shack in shanty town the owner is compensated according to its value when taken, and not according to what it cost him. The Federal Constitution and the Indiana Constitution both protect him, and they protect corporate enterprise with equal fairness by prohibiting confiscation of its property either directly or indirectly. Utilities are not bought and sold in any market place so that a market value can be thus established, and in an area like Indianapolis, with its growth or population and industry, reproduction cost new less depreciation cannot be disregarded in fixing a valuation for rate making purposes."

131 N.E.2d at 325. Judge Emmert's observations are as pertinent today as they were in 1956. It follows that while original cost is *one* of the factors which the Commission should consider in arriving at a fair value figure, it is not necessarily, in and of itself, an accurate reflection of the fair value of the company's property upon which today's investors should be allowed to earn a return. This is especially so where existing plant amounts to nearly three times the original cost figure.

 It is not our function to make the ultimate determination of the fair value of the Company's property, that is the task of the Commission; however, it is within the scope of our review to ensure that the Commission has given appropriate consideration to all relevant factors in making their determination. Since it is evident that the Commission's original cost rate base determination is inconsistent with its fair value finding, we remand this case for reconsideration of the valuation issue in light of the principles discussed in our opinion.

Reversed and remanded.

HOFFMAN and GARRARD, JJ., concur.