SOUTH HAVEN WATERWORKS, A DI-
VISION OF RELIABLE DEVELOP-
MENT CORPORATION, Appellant,

v.

OFFICE OF the UTILITY CONSUMER
COUNSELOR and the Indiana Utility
Regulatory Commission, Appellees.

No. 93A02–9208–EX–375.

Court of Appeals of Indiana,
Third District.

Oct. 4, 1993.

James L. Weiser, Weiser & Sterba, Highland, Daniel W. McGill, Michael G. Banta, Robert E. Heidorn, Barnes & Thornburg, Indianapolis, for appellant.

Robert K. Johnson, Acting Consumer Counselor, Randal S. Forbes, Diane M. Moore, Asst. Consumer Counselors, Office of the Utility Consumer Counselor, Indianapolis, for appellees.

HOFFMAN, Judge.

Appellant South Haven Waterworks [South Haven] appeals the decision of the Indiana Utility Regulatory Commission [IURC] on South Haven's June 1991 petition requesting an increase in its water service and sewage disposal rates for its service area within rural Porter County, Indiana.

As restated, South Haven raises three issues on appeal:

(1) whether the IURC erred in determining that South Haven, organized as an S Corporation, cannot recover through increased rates the individual income tax attributable to the shareholders;

(2) whether the IURC erred in excluding contributions-in-aid-of-construction from South Haven's rate base; and

(3) whether the IURC erred in determining a fair rate of return on South Haven's property devoted to providing utility service.

■ A multiple-tier standard of review is applicable to the IURC's orders. A court on review must inquire whether specific findings exist as to all factual determinations material to the ultimate conclusions; whether substantial evidence within the record as a whole supports the findings of fact; and whether the decision, ruling, or order is contrary to law. *Citizens Action Coalition v. Public Serv.* (1993), Ind.App., 612 N.E.2d 199, 201, Sullivan, J., concurring and dissenting; *Gary–Hobart Water v. Utility Reg. Com'n* (1992), Ind.App., 591 N.E.2d 649, 652.

South Haven first contends that although it is organized as a Subchapter S corporation for federal income tax purposes and does not pay or incur income taxes as a taxable entity, the IURC should have recognized that the utility's income flows through to the shareholders and allowed South Haven to recover the amount of individual income tax attributable to the shareholders. In its order, the IURC stated:

"Petitioner's argument that the utility should, for ratemaking purposes, pay taxes, is the hypothetical approach. The distinguishing factor [in] the case of *Indianapolis Water* is that the corporation incurs stand-alone tax liability though its taxes are paid through a consolidated tax return with its parent. Under Petitioner's theory, Indianapolis Water Company's ratepayers would pay the taxes incurred by Indianapolis Water Company's parent's shareholders when they receive their quarterly dividend payments, of course, this is not permitted in utility ratemaking. We therefore find that since Petitioner will never pay income taxes, while an S corporation, its ratepayers should not pay for such taxes through rates.

Finally, even if Petitioner's argument for tax expense were sound, no evidence has been provided demonstrating that Petitioner's owner pays taxes, or in what amount. The only evidence offered regarding the taxes Petitioner's owner pays are testimonial allusions to an effective 31% individual tax rate."

■ The IURC'S paramount goal in each rate proceeding is to establish a level of rates and charges sufficient to allow the utility to meet its operating expenses as well as a return on investment to compensate its investors. *Citizens Action, supra*, 612 N.E.2d at 201; *Gary–Hobart, supra*, 591 N.E.2d at 652. Operating costs represent one component in the equation to determine the utility's total revenue requirement. *See Citizens Action*, 612 N.E.2d at 201. The taxes paid by a utility are included within its operating costs. Thus, without the adjustment for taxes, operating expenses will be lower resulting in a lower

total revenue requirement. *Cf. id.* (equation for total revenue requirement).

The Public notes the tax advantages realized by the utility's shareholders by choosing S corporation status, chief among them the avoidance of double taxation. The utility's income is not taxed at the corporate level; instead, any tax liability flows through to the shareholders. Accordingly, South Haven will never incur a tax liability while it retains S corporation status.

South Haven contends that it should be allowed an adjustment to its expenses for a tax liability at the 31% individual tax rate, the maximum personal income tax rate in effect at the time of the hearing. South Haven argues that its S corporation status should be viewed similarly to a subsidiary of a C corporation. The C corporation as the parent pays the tax liability incurred by its subsidiary. However, as noted by the IURC, in the parent/subsidiary situation, the subsidiary incurs a stand-alone tax which is paid by the parent. Then shareholders are taxed on any dividends distributed. Under its current status, South Haven is not a taxable entity.

▇ Moreover, as found by the IURC, South Haven has presented no evidence that its shareholders actually paid income taxes attributable to income from South Haven during the test year or at any other time. The adjustment for income tax expenses of a corporation is available only when the corporation can demonstrate that taxes were actually paid. *Office of Util., Etc. v. Indiana Cities* (1982), Ind.App., 440 N.E.2d 14, 15–18. To assign a 31% tax liability as an operating expense incurred by South Haven would be speculative, arbitrary, hypothetical and unsupported by the record. *See id.* The IURC's ratemaking decisions may not be based upon speculation. *Citizens Action, supra,* 612 N.E.2d at 201. Further, the IURC must "make some determination of the *actual* tax liability [of the utility], rather than use a hypothetical figure." (Emphasis added in *Indiana Cities.*) *Indiana Cities,* 440 N.E.2d at 15, *quoting City of Muncie v. Public Service Commission* (1978), 177 Ind.App. 155, 378 N.E.2d 896, 898–899.

The IURC properly determined that South Haven is not entitled to an adjustment to operating expenses for a hypothetical tax.

▇ Next, South Haven contends that the IURC erred in excluding contributions-in-aid-of-construction [CIAC] from South Haven's rate base. The "rate base" is equal to the company's net investment in physical properties plus an allowance for working capital. *Indianapolis Water v. Public Service Com'n* (1985), Ind.App., 484 N.E.2d 635, 637. The utility's rate base is then used to calculate its fair rate of return. *Id.* By definition, CIAC are donations provided at no cost to the utility. *See* IND.CODE §§ 8–1–2–10 and 8–1–2–12 (1988 Ed.) (prescribing the manner by which utilities' accounts will be maintained); and 170 IAC 6–2–2, 170 IAC 8–2–1 (prescribing rules for classification of accounts for water and sewer utilities and adopting the National Association of Utility Regulatory Commissioner's Uniform System of Accounts). Such donations may stem from states, municipalities, customers, developers or others as incentives to upgrade water and sewer systems to accommodate larger customers without burdening existing customers for the improvements.

South Haven presented testimony that its shareholders, as the shareholders of Reliable Development Corporation, contributed 95% of the CIAC listed on its books. South Haven asserts that as the owner of the plant it is entitled to a return on the fair value of the entire plant including the portion listed as CIAC. While South Haven owns the plant, the portions contributed are not investments for which a return is allowed. South Haven requests that the IURC ignore South Haven's own accounting entries which list the contributed plant as CIAC and instead treat the contributed plant as an investment.

In its decision, the IURC stated:

"Petitioner makes much of the Public's failure to produce evidence that the ratepayers paid for the contributions with the lot purchase price. However, Peti-

tioner provided *no* evidence that it purchased the 'contributed' plant upon which it now seeks a return. For these reasons, we find that CIAC should not be included in Petitioner's rate base for purposes of determining a fair return." (Original emphasis.)

The Public contends on appeal that authority from other jurisdictions has allowed judicial notice or a presumption that when utilities share common ownership with land development companies it is common practice and presumed that the costs of the contributed plant were included in the purchase price of lots and homes. Here, the IURC did not take administrative notice of the practice. Further, other than testimony which alluded to the practice, the Public did not present any evidence to that effect. However, as noted by the IURC, South Haven failed to present any evidence that the CIAC was not contributed plant or which portions of the plant were not contributed. The IURC did not act improperly by refusing to include CIAC in South Haven's rate base.

■ Finally, South Haven argues that the IURC improperly determined a fair rate of return at the rate of 9.9% on its property devoted to utility service. South Haven agrees with the IURC's determination that its rates should be based upon a fair rate of return rather than original cost calculation. However, South Haven contends that because the fair rate of return applied by the IURC results in a slightly lower return than the original cost method, the 9.9% rate must be incorrect. Further, South Haven complains that the evidence in the record does not adequately support the 9.9% figure.

The calculation of fair rate of return and this Court's role when reviewing the calculation was explained in *Gary–Hobart:*

"In determining what constitutes a 'fair rate of return,' the Commission generally calculates a composite 'cost of capital' by adding together the weighted costs of various components of the utility's capital structure, e.g., its long term debt, preferred stock, and common stock. The resulting figure, when expressed as a

percentage of the utility's combined debt and equity accounts, is then compared to the utility's existing rate of return. This serves as an initial point of reference in establishing a 'fair rate of return' for utility operations.

We note, however, the Commission may consider ... myriad ... factors when determining a fair rate of return. What constitutes a fair rate of return 'is precisely the type [of determination] committed to the expertise and informed regulatory judgment of the Commission.' This court will review the Commission's findings to determine whether they are sufficient to allow an intelligent review of its fair rate of return determination, but in no case will this court conduct its own extensive search of the record to identify facts relevant to the determination. If we conclude the Commission's ultimate findings are supported by basic findings of fact, we will not disturb its ultimate findings." (Citations omitted.)

*Gary–Hobart, supra,* 591 N.E.2d at 653.

The IURC's order reflects several components in its determination. The IURC considered *inter alia,* South Haven's rate base, investment risk and environmental improvement costs.

The IURC rejected South Haven's recommendation of a fair value rate base because it included CIAC. However, it did utilize South Haven's methodology in determining fair value rate base as 1.2 times South Haven's original cost rate base depreciated.

The IURC noted that the Public presented evidence that the rates of return on low-risk investments ranged between 5.1% and 8.5%. The IURC determined that South Haven was not a low-risk investment.

Additionally, the IURC adjusted South Haven's rate of return based in part on evidence that the Indiana Department of Environmental Management had mandated improvements to South Haven's water and sewer systems. The IURC stated that the mandates should be viewed as necessary in the interest of the public and "a major factor to be considered in setting a fair rate of return."

The above factors indicate a considered determination within the IURC's expertise. There being sufficient evidence to support the rate of return fixed by the IURC, such was not error.

Accordingly, the order of the IURC is affirmed.

Affirmed.

STATON and CHEZEM, JJ., concur.