**LINCOLN UTILITIES, INC., Appellant,**

v.

**OFFICE OF UTILITY CONSUMER COUNSELOR, Appellee.**

No. 93A02-9504-EX-201.

Court of Appeals of Indiana.

Feb. 13, 1996.

Rehearing Denied March 18, 1996.

Transfer Denied June 17, 1996.

Alan E. O'Connor, Crown Point, for appellant.

Anne E. Becker, Robert M. Glennon, Rita K. Baldwin, Office of Utility Consumer Counselor, Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Lincoln Utilities, Inc. (the "Utility") appeals from an order by the Indiana Utility Regulatory Commission (the "Commission"), denying the Utility's petition seeking approval to increase its revenues by 19%.

We affirm.

### ISSUES

The Utility raises two issues for our review:

1.  Did the Commission err when it excluded Contributions in Aid of Construction in determining the Utility's rate base?

2.  Was the rate established by the Commission so unreasonable and insufficient as to be unconstitutionally confiscatory?

### FACTS AND PROCEDURAL HISTORY

The Utility is an Indiana corporation that owns and operates a utility plant, equipment, and facilities, providing water service to customers in the Town of Merrillville, pursuant to a grant of franchise from Merrillville.

The Office of Utility Consumer Counselor (the "Consumer") is a state agency charged with representing the interests of utility cus-

tomers in actions before the Commission, federal agencies and the courts, pursuant to IND.CODE 8–1–1.1–1 (1993).

The Commission is charged with setting rates for Indiana public utilities pursuant to I.C. 8–1–2–25 (1993) and I.C. 8–1–2–42 (1993).

On May 6, 1994, the Utility filed a petition with the Commission to increase its total revenues by $70,441.00, or 19% of its current revenues. The Utility presented evidence that the original cost of its property was $740,977.00. It set depreciation of the property at $226,977.00, and arrived at $514,-511.00 as its current property value. The Utility also introduced evidence to show the value of its plant was $4,493,466.00 under the "reproduction cost new depreciated" method of valuation.

■ The Consumer also began with $740,-977.00, as the original cost of the Utility's property; however, it depreciated this total by $238,459.00, arriving at $502,518.00, as the depreciated cost of the Utility's property. The Consumer introduced evidence that the Utility's Contributions in Aid of Construction ("CIAC")[1] totaled $707,881.00, and subtracted this from the $502,518.00. The Consumer concluded the Utility's plant had a negative rate base and recommended a 2.95% increase to the Utility's present rates to place the Utility at a break-even rate.

After an evidentiary hearing on October 24, 1994, the Commission entered its order on March 22, 1995 in which it set the Utility's base rate at $44,951.00, less an unascertained amount of accumulated depreciation. The Commission also ruled, among other things:

1. The [Utility] is hereby authorized to increase its scheduled water rates and charges to produce additional operating revenues of $12,993.00 for total annual operating revenues of $384,239.00, this being an across-the-board increase of 3.51%.

(R. at 326).

The Utility appeals.

1. CIAC are donations provided at no cost to a utility. *South Haven Waterworks v. Office of the Utility Consumer Counselor*, 621 N.E.2d 653, 655 (Ind.Ct.App.1993). "Such donations may stem from states, municipalities, customers, develop-

*DISCUSSION AND DECISION*

Standard

■ Traditionally, our review of the Commission's order is two-tiered: we inquire if specific findings exist as to all factual determinations material to the ultimate conclusions, and we inquire if substantial evidence exists within the record as a whole to support the Commission's basic findings of fact. *South Haven*, 621 N.E.2d at 654. When reviewing the Commission's order, we give great deference to its rate making methodology. *Office of Utility Consumer Counselor v. Gary–Hobart Water Corp.*, 650 N.E.2d 1201, 1204 (Ind.Ct.App.1995); *Citizens Action Coalition v. Northern Indiana Public Serv. Comm'n*, 555 N.E.2d 162, 163 (Ind.Ct.App.1990). In determining whether the evidence supports the Commission's decision, we neither reweigh the evidence nor substitute our judgment for that of the Commission. *Id.* at 165; *Gary–Hobart*, 650 N.E.2d at 1204. We set aside the Commission's finding of facts only when a review of the whole record clearly indicates that the agency's decision lacks a reasonably sound basis of evidentiary support. *Indianapolis Water Co. v. Public Serv. Comm'n*, 484 N.E.2d 635, 637 (Ind.Ct.App.1985).

■ In addition, we inquire to see if the Commission's order is contrary to law, that is, whether the order is the result of considering or failing to consider some factor or element which improperly influenced the final decision. *Id.* The Commission must remain within its jurisdiction and conform to all relevant statutes, standards and legal principles. *Id.*

I.

■ The Utility initially contends that the Commission failed to conform to the requirements of I.C. 8–1–2–6 by excluding the Utility's CIAC when it determined its rate base. The Utility argues that exclusion of its CIAC contravenes the plain, ordinary and unambig-

ers or others as incentives to upgrade water and sewer systems to accommodate larger customers without burdening existing customers for the improvements." *Id.*

uous terms of the statute and thus, is contrary to law.

The Utility bases its argument on the first sentence of I.C. 8–1–2–6, which states:

> The commission shall value all property of every public utility actually used and useful for the convenience of the public at its fair value, giving such consideration as it deems appropriate in each case to all bases of valuation which may be presented or which the commission is authorized to consider by the following provisions of this section.

The Utility contends that "the statute does not differentiate between property which may have been purchased by the company, or property which may have been contributed." Appellant's Brief at 7. The methodology employed by the Commission in this case is "contrary to law because it violates the plain, unambiguous meaning of I.C. 8–1–2–6 by creating an exception to the statute (contributions in aid of construction) which doesn't exist." Appellant's Brief at 8.

An identical argument was raised and resolved in *South Haven*, 621 N.E.2d 653. Inasmuch as we have leading precedent on the issue raised by the Utility, we are bound to follow it. *Gibson v. Henninger*, 170 Ind.App. 55, 58, 350 N.E.2d 631, 632 (1976). The decisions of the appellate districts are law governing all of Indiana and cannot be disregarded. *Diesel Const. Co. v. Cotten*, 634 N.E.2d 1351, 1353 (Ind.Ct.App.1994). Further, under the doctrine of stare decisis, we follow the previous decisions of this court construing a statute. *Spier by Spier v. City of Plymouth*, 593 N.E.2d 1255, 1261 (Ind.Ct. App.1992), *Dailey v. Pugh*, 83 Ind.App. 431, 437, 131 N.E. 836, 838 (1921). We may repudiate those decisions only if strong reason exists to do so. *Spier*, 593 N.E.2d at 1261. We have examined the *South Haven* decision, as well as the argument offered by the Utility, and find no strong reason to abandon the holding of *South Haven*.

The Utility argues that *South Haven* contravenes "I.C. 8–1–2–6 and a long line of cases on the subject." Appellant's Brief at 12. It complains that, in *South Haven*, Judge Hoffman misquoted *Indianapolis Water*, 484 N.E.2d at 637, as well as misinterpreted *City of Evansville v. Southern Indiana Gas & Elec.*, 167 Ind.App. 472, 339 N.E.2d 562 (1975). We do not find this to be so.

The proposition in *South Haven* under attack is as follows: "The 'rate base' is equal to the company's net investment in physical properties plus an allowance for working capital." *South Haven*, 621 N.E.2d at 655. The Utility takes pains to point out that none of the previous cases upon which *South Haven* depends use the word "company" to modify "net investments."

Initially, we note two points: first, Judge Hoffman did not quote *Indianapolis Water* in *South Haven*, rather he cited to it for support of his proposition, *see South Haven*, 621 N.E.2d at 655; and second, until the time of the *South Haven* decision, the inclusion of CIAC in a utility's net assets for rate base determinations had not been an issue before this court. Further, contrary to the Utility's argument, we find that the addition of the word "company" fully comports with then existing precedent.

In *City of Evansville*, Judge Staton writes: "The 'rate base' consists of that utility property employed in providing the public with service for which rates are charged and constitutes the investment upon which the 'return' is to be earned." *City of Evansville*, 339 N.E.2d at 569. Although the Utility is chiefly concerned with the first clause of this sentence in its argument, we note and focus upon the second, that is, property which "constitutes the investment upon which the 'return' is to be earned." *Id.* Earlier in the opinion, Judge Staton states that "[t]he Commission's primary object in every rate proceeding is to establish a level of rates and charges sufficient to permit the utility to meet its operating expenses plus a return on investment which will compensate its investors." *Id.* at 568. Reading this statement with the statement regarding "rate base," and in harmony with the entire opinion, it is *not inconsistent to draw the conclusion that when there is no investment, there should be no return*. The concept of return on actual investment echoes through all of the cases cited by the parties in the present action.

*See Gary–Hobart Water Corp.,* 650 N.E.2d at 1203–04; *Indianapolis Water,* 484 N.E.2d at 639; *City of Evansville,* 339 N.E.2d at 568–71. Thus, in *South Haven,* when Judge Hoffman stated that a utility's "rate base" was based, in part, upon its net investment, he was simply stating a long understood practice.

We agree with the Consumer that "[a]t its core, what [the Utility] is seeking in this Cause is the ability to earn a profit on property for which it has paid nothing." We do not believe that this is the correct interpretation of I.C. 8–1–2–6 and thus, affirm the decision of the Commission.

## II.

The Utility also contends that "the $44,951.00 rate base was not only improperly derived by the Commission, any such rate base can only result in rates to [the Utility] which are so unreasonable and insufficient as to be unconstitutionally confiscatory on their face."[2]

In its order the Commission stated: Finally, [the Utility]'s evidence pertinent to a fair return which it should be allowed to earn upon the fair value of its investment is insufficient for the Commission to make a finding, and the [Consumer] presented no evidence on this issue. It would be an unproductive exercise to determine the amount upon which [the Utility] is allowed to earn a return if there is no evidence as to the proper fair return. Therefore, both parties should be offered an opportunity to present additional evidence on a proper return for [the Utility]. Therefore, the Commission finds that further proceedings, including a further evidentiary hearing, should be conducted in this Cause if [the Utility] is able to demonstrate that it has investment upon which it is entitled to earn a return.

2. The Utility seems to complain about the setting of its rates based upon historical operating cost; however, we note that the Utility agreed to rates set upon a historical test year at the prehearing conference. (R. at 31, 34).

The Utility also argues that the 3.5% increase ordered by the Commission is confiscatory and "does not serve to attract investors; nor is it designed to place a utility 'on sound financial basis,' but will instead spell doom for this utility,

(R. at 325). In *Williamson Co. Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court stated: "As the Court has made clear in several recent decisions, a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186, 105 S.Ct. at 3116. The Commission has not yet made the determination respecting the rate of return on the Utility's base rate. Thus, this issue is not ripe for adjudication. *See also State ex rel. Sink & Edwards v. Hancock Superior Court,* 470 N.E.2d 1320, 1322 (Ind.1984); *Impink v. City of Indianapolis Bd. of Public Works,* 612 N.E.2d 1125, 1127 (Ind.Ct.App.1993).

Judgment affirmed.

DARDEN and HOFFMAN, JJ., concur.

and the piecemeal confiscation of its property." Appellant's Brief at 22. However, it is clear from the Commission's order that the 3.5% increase is an interim increase until the Commission has sufficient evidence from the parties to determine a fair rate of return on the Utility's investments. The Utility failed to present evidence concerning a fair rate of return, thus it cannot now be seen to complain that the Commission failed to set such fair rate.