**INDIANA OFFICE OF UTILITY CONSUMER COUNSELOR,**
Appellant,

v.

**LINCOLN UTILITIES, INC. and Indiana Water Service, Inc.,**
Appellees.

No. 93A02–0204–EX–301.

Court of Appeals of Indiana.

March 19, 2003.

Anne E. Becker, Daniel M. Levay, Office of Utility Consumer Counselor, Indianapolis, IN, Attorneys for Appellant.

Fred E. Schlegel, Michael J. Huston, Clayton C. Miller, Baker & Daniels, Indianapolis, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

The Indiana Office of Utility Consumer Counselor ("OUCC") appeals the decision of the Indiana Utility Regulatory Commission ("IURC") approving the sale of the assets of Lincoln Utilities, Inc. ("Lincoln") to Indiana Water Service, Inc. ("IWSI")[1] and providing for an acquisition adjustment of 90% of the purchase price to the fair value rate base, raising two issues for review, one of which we find dispositive: whether there is substantial evidence supporting the IURC's determination that the $1.25 million purchase price was reasonable.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Lincoln is a small company that provides water service to less than 2,000 customers. It has no water treatment facility and consists largely of water supply lines contributed by developers and others. IWSI is a holding company created to purchase Lincoln's assets and is a subsidiary of Utilities, Inc., a company that owns 400 utility companies in sixteen states.

Lincoln and IWSI entered into an agreement for IWSI to purchase Lincoln's assets for $1.25 million contingent upon the IURC approving an acquisition adjustment of at least 90% of the purchase price to its fair value rate base. The OUCC opposed the agreement.

After a hearing, the IURC issued an order approving the agreement and the acquisition adjustment. The OUCC filed a petition for rehearing and reconsideration which the IURC denied on February 14, 2002. The OUCC now appeals.

## DISCUSSION AND DECISION

 The OUCC appeals the decision of the IURC. *See* IC 8–1–3–1 (providing for judicial review of IURC decisions). This court's review of IURC decisions is two-tiered. We first determine whether specific findings exist as to all factual determinations material to the ultimate conclusions, and we inquire if substantial evidence exists within the record as a whole to support the IURC's basic findings of fact. *Hancock County Rural Elec. Membership Corp. v. City of Greenfield,* 768 N.E.2d 909, 911 (Ind.Ct.App.2002); *Lincoln Utils., Inc. v. Office of Util. Consumer Counselor,* 661 N.E.2d 562, 564 (Ind.Ct. App.1996), *trans. denied; Indianapolis Water Co. v. Pub. Serv. Comm'n of Indiana,* 484 N.E.2d 635, 637–38 (Ind.Ct. App.1985). In determining whether the evidence supports the IURC's decision, we neither reweigh the evidence nor substitute our judgment for that of the IURC. *Lincoln Utils.,* 661 N.E.2d at 564; *Indianapolis Water Co.,* 484 N.E.2d at 637–38. We set aside the IURC's findings of fact only when a review of the entire record clearly indicates that its decision lacks a reasonably sound basis of evidentiary support. *Lincoln Utils.,* 661 N.E.2d at 564; *Indianapolis Water Co.,* 484 N.E.2d at 637–38.

We also inquire whether the IURC's order is contrary to law, that is, whether the order is the result of considering or failing to consider some factor or element

---

1. IC 8–1–2–83 provides that no public utility may sell its works without the approval of the IURC after a hearing.

which improperly influenced the final decision. *Lincoln Utils.*, 661 N.E.2d at 564; *Indianapolis Water Co.*, 484 N.E.2d at 637–38. We have previously explained that a decision is contrary to law when the IURC fails to stay within its jurisdiction and abide by the statutory and legal principles that guide it. *Hancock County Rural Elec. Membership Corp.*, 768 N.E.2d at 911.

■ The OUCC contends that the record as a whole lacks substantial evidence to support the IURC's finding that the $1.25 million purchase price for Lincoln was reasonable. IC 8–1–2–6 regulates how the IURC values public utilities, and subsection (a) requires it to consider "all property of every public utility actually used and useful for the convenience of the public at its fair value, giving such consideration as it deems appropriate in each case to all bases of valuation which may be presented or which the commission is authorized to consider by the following provisions of this section." *See also Office of Util. Consumer Counselor v. Gary–Hobart Water Corp.*, 650 N.E.2d 1201, 1203 (Ind. Ct.App.1995) (citing statute). Subsection (b) prohibits it from considering the good will growing out of the operation of any utility as a going concern. It also excludes construction costs from consideration unless such costs were actually incurred and paid as part of the cost entering into the construction of the utility. Subsection (b) further provides:

"All public utility valuations shall be based upon·tangible property, that is, such property as has value by reason of construction costs, either in materials purchased or in assembling of materials into structures by the labor or (of) workers and the services of superintendents, including engineers, legal and court costs, accounting systems and transportation costs, and also including insurance and interest charges on capital accounts during the construction period. As an element in determining value the commission may also take into account reproduction costs at current prices, less depreciation, based on the items set forth in the last sentence hereof and shall not include good will, going value, or natural resources."

IC 8–1–2–6(b).

■ The fair value referred to in the statute is the figure that constitutes the rate base upon which a utility should be allowed to earn a return. *Gary–Hobart Water Corp.*, 650 N.E.2d at 1203. The rate base is equal to the company's net investment in physical properties plus an allowance for working capital. *South Haven Waterworks, a Div. of Reliable Dev. Corp. v. Office of Util. Consumer Counselor*, 621 N.E.2d 653, 655 (Ind.Ct.App.1993). The utility's rate base is then used to calculate its fair rate of return. *Id.* Fair value as used in IC 8–1–2–6 is a conclusion or final figure, drawn from all the various values or factors to be weighed by the IURC. *Gary–Hobart Water Corp.*, 650 N.E.2d at 1203. The IURC is to balance valuation evidence along with other factors to achieve a figure that is fair and equitable to both investor and consumer. *Capital Improvement Bd. of Managers of Marion County (Convention Ctr.) v. Pub. Serv. Comm'n*, 176 Ind.App. 240, 260, 375 N.E.2d 616, 631 (1978).

Here, the IURC concluded that the evidence supported the reasonableness of the purchase price. It explained that "a purchaser should be able to earn a return on the purchase price of an acquired utility, where the acquisition is a result of arm's length negotiations, and where other evidence shows that the resulting fair market value of the system should be considered *prima facie* fair value, and thus, included in fair value rate base." *Appellant's Ap-*

*pendix* at 11. While there was evidence to the contrary, both James Hollis, Lincoln's president, and Carl Wenz, a vice-president of IWCI, testified that the $1.25 million price was the result of arm's length negotiations between willing, unaffiliated parties. The evidence supporting this conclusion was substantial. However, there was virtually no other evidence of the value of Lincoln's assets. The IURC noted that Hollis testified that he performed a replacement cost depreciated study for a prior rate case which valued Lincoln's assets, including contributed property, at $3.8 million. However, the IURC observed that this figure was not sufficiently tested and was not entered into evidence in this case. Nonetheless, it stated,

> "without relying on the precision of the figure, it is possible to broadly generalize that the purchase price agreed between the parties is roughly three times less than the earlier tendered [study]. Thus, even if there are problems with the RCNLD study, it is doubtful that even a critical analysis of the study would result in a RCNLD value less than the proposed purchase price of $1.25 million. Accordingly, while not conclusive on the issue, the RCNLD value is an indication that the purchase price is in the range of reasonableness."

*Id.* at 12. Clearly, the IURC relied on the study's conclusions as evidence of the fair value of Lincoln's assets, but also acknowledged that the study was not admitted in this case. Relying on evidence not admitted in this case was error. This "evidence" of the fair value of Lincoln's assets may not be considered.

Wenz also testified that Utilities, Inc. typically pays between six and seven hundred dollars per customer for utilities that it acquires. The IURC characterizes this as the "best evidence on this issue." *Id.* at 11. The purchase price of Lincoln's assets fell within this range. However, a valuation in terms of Lincoln's customers is not permitted by statute. Rather, the value must be calculated based on *tangible property*. Moreover, the going concern value and good will must be excluded from the value. *See* IC 8–1–2–6(b).

The IURC noted the concerns of the OUCC about "the paucity of evidence" of fair value. *Appellant's Appendix* at 12. It further agreed that more financial information "would be helpful in determining the fair market value of assets being acquired in this case, and in future cases we would certainly want to see more support than was presented here." *Id.* at 13. Nonetheless, the IURC observed that Lincoln is a small utility with limited financial resources that cannot be expected to produce the kind of detailed information required of larger utilities.

Lincoln may be small in comparison to other utilities, however, the value of the transaction, at well over one million dollars, was not negligible. It is not unduly burdensome to expect the parties to a transaction involving this amount of money to incur some expense in demonstrating that the purchase price was reasonable.

 The OUCC also maintains that the IURC erred as a matter of law in including property contributed in aid of construction ("CIAC" or "contributed plant")[2] in the fair value of Lincoln's as-

---

**2.** By definition, CIAC are donations provided at no cost to the utility. *South Haven Waterworks,* 621 N.E.2d at 655–56 (citing IC 8–1–2–10 and IC 8–1–2–12 (prescribing the manner by which utilities' accounts will be maintained); and 170 IAC 6–2–2, and 170 IAC 8–2–1 (prescribing rules for classification of accounts for water and sewer utilities and adopting the National Association of Utility Regulatory Commissioner's Uniform System of Accounts)). Such donations may stem from states, municipalities, customers, devel-

sets and in approving IWSI's request for an acquisition adjustment for 90% of the purchase price. It points out that over 98% of Lincoln's system consisted of contributed plant and should have been excluded from the fair value calculation because it is currently excluded from its rate base. The OUCC contends that including CIAC in the purchase price, and then allowing an acquisition adjustment to the rate base of 90% of the purchase price, is tantamount to allowing Lincoln a return on CIAC, which is prohibited under IC 8–1–2–6. In *South Haven Waterworks*, 621 N.E.2d at 655–56, a rate case, the utility, South Haven, asserted that as the owner of the plant it was entitled to a return on the fair value of the entire plant including the portion listed as CIAC. We rejected that argument, and concluded that "the portions contributed are not investments for which a return is allowed." *Id.* We therefore upheld the IURC's decision to refuse to include CIAC in South Haven's rate base. *Id.*

Here, Wenz testified that the purchase was contingent on the acquisition adjustment, and without it, the sale would not be consummated because the value of Lincoln to Utilities, Inc. was affected by the acquisition adjustment. Accordingly, Lincoln is benefiting financially from the inclusion of CIAC and the acquisition adjustment. The IURC's order contains no clear explanation of why permitting this acquisition adjustment under these circumstances does not violate the principle that a utility may not earn a return on property in which it has made no investment. Instead, it notes that this is an acquisition case, not a rate case, and observes that acquisition adjustments may be appropriate to facilitate transfer of small, closely-held utility companies. On remand, if the IURC again addresses the acquisition, it should include such an explanation.

We do not dispute that approving this transaction may make good economic sense. If CIAC were never includable in the fair market value upon the transfer of a utility, it would render utilities with a high percentage of CIAC virtually valueless, and there would be no incentive for larger, more efficient companies to acquire those like Lincoln, the small size and inefficiency of which render it untenable in the long term. Nonetheless, the sale cannot be approved if it is contrary to statute. The IURC is charged with determining Lincoln's fair value and ensuring that the purchase price of its assets was reasonable. Here, the parties put forth virtually no evidence of the type required by the statute to establish Lincoln's value. On remand, the parties may well be able to produce such evidence. However, based on the record before us, we hold that the IURC's decision is not supported by substantial evidence and remand for proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN and SHARPNACK, JJ., concur.

---

opers, or others as incentives to upgrade water and sewer systems to accommodate larger customers without burdening existing customers for the improvements. *Id.* Because they do not represent an investment by the donee, the donee may not include the value of such contributions in its fair value rate base. IC 8–1–2–6(b) (costs must be actually incurred to be included in fair value).