CITY OF FORT WAYNE, Indiana,
Appellant–Defendant,

v.

UTILITY CENTER, INC., d/b/a Aquasource; Indiana Office of Utility Consumer Counselor; and the Indiana Utility Regulatory Commission, Appellees–Plaintiffs.

No. 93A02–0312–EX–01092.

Court of Appeals of Indiana.

Jan. 13, 2006.

Karl L. Mulvaney, Randolph L. Seger, Christopher M. York, Indianapolis, for Appellant.

Philip B. McKiernan, Joseph M. Hendel, Indianapolis, for Appellees.

1. Fort Wayne also named the Commission as an appellee, and the Commission filed an

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Appellant City of Fort Wayne, Indiana ("Fort Wayne") appeals the Indiana Utility Regulatory Commission's ("the Commission") order in favor of Appellees Utility Center, Inc., d/b/a AquaSource ("Utility Center"), and the Indiana Office of Utility Consumer Counselor ("the Consumer Counselor").[1]

We affirm.

### ISSUES

Fort Wayne raises two issues for our review, which we restate as:

I. Whether the Commission improperly computed a hypothetical purchase price in determining that Utility Center qualified for a return on and return of an acquisition adjustment.

II. Whether the Commission's decision was contrary to law when it included 100% of the costs of transactions with affiliates in Utility Center's rates without finding that those costs were just, reasonable, and in the public interest.

### FACTS AND PROCEDURAL HISTORY

Utility Center is an Indiana corporation engaged in the business of rendering water and sewer utility services to the public through a plant and property located in Allen County and Whitley County, Indiana. In 1998, Utility Center became the subject of a Commission investigation due to concerns that the utility was not providing reasonably adequate services to its customers. Soon after the investiga-

appellee's brief.

tion was opened, Utility Center's common stock was purchased by AquaSource for $15 million. The total acquisition cost for the stock recorded on Utility Center's books, which included an additional $1,415,807 representing transaction fees, was $16,415,807. The book value of Utility Center's common equity on the acquisition date was $3,935,664.

Utility Center entered into a settlement agreement with the Commission, the Consumer Counselor, Fort Wayne, and the Allen County Regional Sewer and Water District. The settlement resulted in an agreed Consolidated Master Plan for Utility Center, the goal of which was to resolve the utility's operational problems on a going forward basis.

Utility Center subsequently filed a petition with the Commission for a rate increase, and as part of its petition it requested an acquisition adjustment to allow the utility to recover the cost of the purchase price paid by AquaSource and earn a return on its investment.

The Commission found that as a result of AquaSource's acquisition and management of the utility, the company was in better condition than before it was acquired. The Commission also found that based upon the new owner's efforts to remedy problems at the troubled utility, a return on the acquisition adjustment should be allowed. The Commission based its decision on the fact that Utility Center was purchased in an arm's length transaction, Utility Center was a troubled utility at the time of the purchase, and Utility Center's parent company followed the course of action that the Commission ordered Utility Center to follow when it adopted a detailed plan of action in a prior cause.

During the course of the proceedings, the Consumer Counselor and Fort Wayne raised questions about alleged misallocations of costs between Utility Center and its affiliated companies. The Commission ordered Utility Center to file any additional affiliated contracts it may have had, and it stated that further investigation would be warranted if the contracts were found to be against the public interest.

Utility Center initiated an appeal to this court following the Commission's initial orders [2]; however, Utility Center and the Consumer Counselor subsequently filed with this court a "Verified Joint Motion for Limited Remand and Temporary Stay to Permit Consideration and Entry of Order on Settlement Agreement" ("motion for remand") requesting this Court to remand to the Commission for the purpose of allowing the Commission to receive, consider, and rule on a proposed settlement agreement between Utility Center and the Consumer Counselor. Fort Wayne opposed the remand and also filed a motion to dismiss Utility Center's appeal. On August 27, 2003, this Court granted the motion for remand, stayed the appeal, and ordered the Commission to consider and rule on the proposed settlement.

The Commission held an evidentiary hearing concerning the settlement on December 4, 2003, and issued an order on December 10, 2003 ("the remand order") approving the settlement. After discussing relevant facts and information, the Commission determined that (1) the terms of the settlement were in the public interest and that (2) Utility Center was author-

---

2. The Commission issued an order on October 10, 2002. On October 23, 2002, the Commission issued a nunc pro tunc order replacing the October 10, 2002 order. On December 19, 2002, the Commission issued an order on rehearing approving Utility Center's requested change in the annual amortization for sewer operations and denying Utility Center's request to reconsider the amount of federal and state income tax expenses used in the calculation of rates.

ized to increase its schedule of water rates and charges. Appellant's App. at 16. The Commission concluded that "upon reviewing our earlier findings relating to the acquisition adjustment and the costs of affiliate transactions, [we are] not persuaded to make any of the changes argued by Fort Wayne." Appellant's App. at 13. The remand order increased (1) the amount of federal and state income tax expenses that Utility Center may recover in its rates; (2) Utility Center's net income; and (3) Utility Center's rates and charges for both its water and sewer utilities.

Fort Wayne appealed the Commission's original orders and the remand order, and it subsequently filed various motions pertaining thereto. On January 23, 2004, this court issued an order (1) granting Utility Center's rate increase request, (2) lifting the stay of appeal of the original orders, (3) denying Fort Wayne's request to file a brief concerning the original orders; and (4) dismissing, as moot, Utility Center's appeal arising from the original orders. This Court ruled that Fort Wayne could proceed with its remand appeal.

On April 14, 2004, this Court issued an order clarifying the parties' status in the appeal. The upshot of the order was that Fort Wayne could appeal the Commission's conclusions in the remand order concerning issues related to the acquisition adjustment and affiliate transactions. Specifically, Fort Wayne could argue that the rate increase authorized by the remand order was too high and that rates should be decreased to a level equal to the amount authorized in the original orders.

### DISCUSSION AND DECISION

### STANDARD OF REVIEW

■ The Commission is a "fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." *United States Gypsum v.*

*Indiana Gas Co.*, 735 N.E.2d 790, 795 (Ind.2000). The Commission's purpose is "to insure that public utilities provide constant, reliable, and efficient service to [their] customers, the citizens of this state." *Indiana Bell Telephone Co. v. Indiana Utility Regulatory Commission,* 715 N.E.2d 351, 354 n. 3 (Ind.1999).

■ When reviewing the Commission's orders, this court employs a two-tiered standard of review. *United States Gypsum, id.* First, the court determines whether the decision is supported by specific findings of fact and by sufficient evidence. *Hancock County Rural Electric Membership Corp. v. City of Greenfield,* 768 N.E.2d 909, 911 (Ind.Ct.App.2002). Second, the court determines whether the Commission's decision is contrary to law. *Id.* The Commission's findings of basic fact "must reveal [the Commission's] analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim." *Gary–Hobart Water Corp. v. Indiana Utility Regulatory Commission,* 591 N.E.2d 649, 652 (Ind.Ct.App.1992).

■ The entity challenging the Commission's decision has the burden of proof to show that the decision is contrary to law. *Wilfong v. Indiana Gas Co.*, 399 N.E.2d 788, 790 (Ind.Ct.App.1980). However, "any agency determination that is not in accordance with the law may be set aside because a reviewing court owes no deference to an agency's conclusions of law." *PSI Energy, Inc. v. Indiana Office of Utility Consumer Counsel,* 764 N.E.2d 769, 774 (Ind.Ct.App.2002), *trans. denied.*

### ISSUE I: COMPUTATION OF ACQUISITION ADJUSTMENT

### A. ACQUISITION ADJUSTMENT: "HYPOTHETICAL" PURCHASE PRICE

Fort Wayne contends that the Commission's remand order is contrary to law

because the Commission, in calculating the acquisition adjustment expense, relied on a "hypothetical" purchase price. Fort Wayne argues that "before recovery of and on an acquisition adjustment is appropriate, the utility, in this case AquaSource, must establish the reasonableness of the purchase price paid for Utility Center." Appellant's Brief at 12–13. Fort Wayne further argues that "even though [the Commission] found [in the original orders] that Utility Center had failed to adequately demonstrate the reasonableness of the purchase price paid by AquaSource for Utility Center, [the Commission] calculated a hypothetical reasonable price for Utility Center and used such hypothetical purchase price to determine the amount of the acquisition adjustment...." Appellant's Brief at 13. In support of its argument that the Commission erred in its determination of the acquisition adjustment, Fort Wayne cites *Indiana Office of Utility Consumer Counselor v. Lincoln Utilities, Inc.*, 784 N.E.2d 1072, 1076 (Ind.Ct.App.2003) and *Indiana Gas Co. v. Office of Utility Consumer Counselor*, 675 N.E.2d 739, 745 (Ind.Ct.App.1997), *trans. denied*, for the proposition that utility rates may not be based on a "hypothetical" expense.

■ Ratemaking is a detailed and highly technical process. *Office of the Public Counsellor v. Indiana & Michigan Electric Co.*, 416 N.E.2d 161, 164 (Ind.Ct.App. 1981). Within the authority conferred by statute, the Commission is entrusted with responsibility "to discern the correct methodology for fixing the components of ratemaking." *Office of Utility Consumer Counselor v. Citizens Telephone Corp.*, 681 N.E.2d 252, 258 (Ind.Ct.App.1997). Ind. Code § 8–1–2–6(a) requires the Commission to value a utility's property for ratemaking purposes by "giving such consideration as it deems appropriate in each case to all bases of valuation which may be presented or which the commission is authorized to consider...." In applying this provision, the Commission has been given broad discretion in reaching an appropriate valuation, and we have previously held that it is error to conclude that "some figure identical to that fixed by the Commission must be specified in the evidence." *Bethlehem Steel Corp. v. Northern Indiana Public Service Co.*, 397 N.E.2d 623, 629 (Ind.Ct.App.1979).

■ Our review of the record discloses that the Commission's remand order addresses the propriety of the actual price paid by the utility, as reflected on its books and records. The Commission determined that the acquisition adjustment could not be based on the entire actual price; instead, the Commission used several objective benchmarks to determine what portion of the actual purchase price was reasonable. Appellant's App. at 67. In making its determination, the Commission considered the price-to-book ratios discussed by Utility Center's and the Consumer Counselor's witnesses. The Commission considered, and ultimately rejected, Utility Center's and the Consumer Counselor's evidence pertaining to the cost of the sale on a per customer basis, but it was able to use the evidence before it to make an informed determination. In so doing, the Commission properly exercised its authority and balanced the interests of both the consumer and Utility Center's investors, which is the heart of the ratemaking process. *See Lincoln Utilities*, 784 N.E.2d at 1075.

We disagree with Fort Wayne's reading of *Indiana Cities* as it pertains to the term "hypothetical." In that case, this court reversed the Commission's decision to allow a public utility to reflect in its rates a federal tax expense calculated on a "single entity basis," even though the utility participated with its parent company and affiliates in the filing of a consolidated tax return. 440 N.E.2d at 14–15. We held that under the facts presented, the federal

income tax expense allowed by the Commission was "hypothetical" and should not be reflected in the utility's rates. *Id.* at 15, 17–18. We further held that what made the expense "hypothetical" was that no tax payment actually was made to the federal government. *Id.* at 15, 17; *see also South Haven Waterworks v. Office of the Utility Consumer Counselor,* 621 N.E.2d 653, 655 (Ind.Ct.App.1993) (holding that a utility's tax expense is "hypothetical" unless the utility can demonstrate that "taxes were actually paid"). Here, where an actual purchase price was paid, and the Commission used the evidence presented by the parties to determine what portion of the purchase price was relevant to the computation of the acquisition adjustment, there is no "hypothetical" value involved.

## B. ACQUISITION ADJUSTMENT: INTANGIBLE PROPERTY

Fort Wayne contends that the Commission's valuation of Utility Center's property is not supported by sufficient evidence. Fort Wayne notes that Ind.Code § 8–1–2–6(b) requires the Commission to ensure that valuation is based on tangible assets and is not based upon intangibles such as goodwill, going concern value, or natural resources. Fort Wayne argues that the Commission's use of industry-wide information to determine Utility Center's valuation, a multiplier of book value "that most likely includes transactions that valued intangible assets," is improper.

■ In its October 23, 2002 order, the Commission noted testimony by a Utility Center witness that the existence of goodwill or going concern value could be inferred only if "AquaSource's investment of $31.6 million exceeded the sum of the values of Utility Center's tangible property." Appellant's App. at 66. The Commission further noted that a Utility Center witness testified that AquaSource's investment was

less than the "RCNLD" value of $42.6 million.[3] *Id.* After noting that there was a shortage of evidence "proving that the purchase price includes goodwill," the Commission found that "the amount eligible for favorable acquisition adjustment treatment should be less than the full purchase price." *Id.* Accordingly, the Commission determined based on the evidence presented that Utility Center should include as an acquisition adjustment approximately half of the purchase price of the utility.

Under the Commission's market-to-book valuation, the sum of Utility Center's equity ($3,935,664) and insider debt ($3,075,000) as of the date of acquisition was multiplied by a factor of 2.09, which represented the market-to-book ration of publicly traded water utilities prevailing near the date of acquisition. The resulting amount ($14,652,290) was reduced by the value of Utility Center's equity and insider debt ($7,010,665) to yield the portion of Utility Center's actual purchase price eligible for acquisition adjustment treatment. When allowed fees associated with Utility Center's acquisition ($48,707) were added, the result was the portion of Utility Center's total acquisition adjustment that the Commission permitted to be reflected in its rates ($7,690,332). Given the lack of any evidence to show that intangibles were included in the valuation in the first place or to show that intangibles were included in the Commission's determination of a reduced valuation, we cannot say that the Commission abused its discretion in calculating the valuation of the purchase price.

## II. COST OF TRANSACTIONS WITH AFFILIATES

Fort Wayne contends that the Commission's remand order is contrary to law because it allows Utility Center to recover 100 percent of its affiliate transaction ex-

---

**3.** "RCNLD" is an acronym for "replacement cost new less depreciation."

penses for various construction projects, as well as operations and maintenance, "despite concerns of abuse and absent a finding that the amounts were appropriate." Appellant's Brief at 23. Fort Wayne further contends that the Commission improperly shifted the burden of proof from Utility Center to Fort Wayne and the Consumer Counselor.

The Commission, in its October 23, 2002 order, notes that the expenses at issue are, in part, the subject of Utility Center's Service Agreement with Aqua-Source that was filed in 1999. The service agreement was filed pursuant to Ind.Code § 8–1–2–49(2), which provides that "[n]o management, construction, engineering, or similar contract, made after March 8, 1933, with any affiliated interest ... shall be effective unless it shall first have been filed with the commission." The statute further provides, "If it be found that any such contract is not in the public interest, the commission, after investigation and a hearing, is hereby authorized to disapprove such contract."

In its October 23, 2002 order, the Commission further notes that Fort Wayne and the Consumer Counselor "both raised serious questions about the potential misallocation of costs between affiliated companies as well as possible excessive markups." Appellant's App. at 92. The order further provides that "[t]o the extent [Utility Center] has any management, construction, engineering or other contracts with affiliates that are not on file with the Commission, as required by I.C. 8–1–2–49, the Commission finds that [Utility Center] should file such contracts within thirty days after the date of this Order." *Id.* The order then states that

> Said contracts should include sufficient specificity to inform the Commission of the transaction contemplated, and on what terms those transactions will be pursued, so that the Commission will be

able to review and determine whether an affiliate contract is consistent with the public interest. Upon receiving the filed affiliated contracts, the Commission will review them pursuant to I.C. 8–1–2–49 to ensure they are in the public interest. If after a review the Commission determines the contracts are not in the public interest, further investigation may be warranted.

*Id.* at 92–93.

Over forty years ago, the Appellate Court of Indiana held that under the similarly worded predecessor statute to Ind. Code § 8–1–2–49(2), "the only requirement for a service contract with any affiliated interest is that it be filed with the commission before it may become effective; after it has been filed, the contract becomes effective immediately and remains in effect unless disapproved by the commission." *City of Terre Haute v. Terre Haute Water Works Corp.*, 133 Ind.App. 232, 180 N.E.2d 110 (1962). We cannot say that the Commission either abused its discretion or acted contrary to law in crafting a solution that recognized the dictates of Ind.Code § 8–1–2–49(2) while providing for further review to insure that the public interest is considered. Furthermore, we cannot say that the Commission has improperly shifted the burden of proof. It is clear that the onus is upon Utility Center to submit proper documentation that shows its affiliate contracts are in the public's interest.

### CONCLUSION

The Commission's orders are supported by sufficient evidence and are not contrary to law.

Affirmed.

DARDEN, J., and CRONE, J., concur.